## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

| | |
|---|---|
| **Hon. Michael B. Kaplan** | 609-989-0478 |
| **United States Bankruptcy Judge** | 609-989-2259 Fax |

June 24, 2011

Candyce I. Smith-Sklar, Esq.
Law Offices of Sklar Smith-Sklar
1901 N. Olden Avenue, Suite 22
Ewing, NJ 08618
Attorney for the Debtors, Rodolfo and Prishila Garcia

Joel A. Ackerman, Esq.
Zucker, Goldberg & Ackerman, LLC
200 Sheffield Street, Suite 101
P.O. Box 1024
Mountainside, NJ 07092-0024
Attorney for Bank of America

       Re: In re Garcia (Chapter 13)
         Case No. 10-23707 (MBK)

Counselors:

   This matter is before the Court upon the motion (the "Motion") of Rodolfo and Prishila Garcia (the "Debtors") to modify the proof of claim filed by Bank of America ("BofA"). The Court has reviewed the pleadings submitted and entertained oral argument on May 10, 2011. The Court issues the following ruling:

 **I.**  **Jurisdiction**

   The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (G) and (O). Venue is proper in this Court pursuant

to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

**II.  Background**

On May 4, 2010 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Concurrently therewith, the Debtors filed a Chapter 13 plan (the "Plan") and sought confirmation of the Plan by this Court. See Docket No. 2. On the Petition Date, the bankruptcy court clerk docketed notices of the Debtors' bankruptcy case, the September 1, 2010 deadline for all creditors (except governmental units) to file proofs of claim, and the initial hearing on confirmation of the Debtors' Plan scheduled for July 13, 2010. See Docket Nos. 5 and 6. BofA filed an objection to the Debtors' Plan on May 18, 2010, as amended on June 25, 2010. See Docket Nos. 15 and 18.

On August 12, 2010, the Debtors filed a secured claim (the "August 12 Claim") on behalf of BofA in the amount of $126,388.00 based on a mortgage note held by BofA on the Debtors' residence. See Claims Register, Claim No. 14-1. Thereafter, on August 31, 2010, BofA filed a secured claim (the "August 31 Claim") in the amount of $153,072.46 based on the same mortgage note. See Claims Register, Claim No. 16-1.[1]

---

[1] The Federal Rules of Bankruptcy Procedure are clear that neither a debtor nor trustee can file a proof of claim on behalf of a creditor until the claims deadline has passed. Specifically, Fed. R. Bankr. P. 3004 states:

> Rule 3004. Filing of Claims by Debtor or Trustee
>
> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.

Here, BofA timely filed a proof of claim prior to the claims bar date. As such, the Debtors had no right to file a claim on BofA's behalf and the August 12 Claim has no legal effect. Accordingly, the only valid claim filed for BofA is the August 31 Claim, as amended, which was filed by BofA on its own behalf.

2

On August 24, 2010, prior to the filing of BofA's August 31 Claim, the Court held a confirmation hearing on the Debtors' Plan and subsequently entered an order (the "Confirmation Order") confirming the Plan on September 22, 2010. See Docket No. 27. Pursuant to the Confirmation Order, the Debtors are obligated to pay to the Chapter 13 Standing Trustee (the "Trustee") a monthly sum of $427.00 for a period of 57 months, commencing on June 1, 2010. Id. Additionally, the Confirmation Order provides the Trustee with the ability to account for timely filed proofs of claim, including proofs of claim submitted after entry of the Confirmation Order, by authorizing the Trustee "to submit, ex-parte, an Amended Confirmation Order, if required, subsequent to the passage of the claims bar date(s) provided under Fed. R. Bank. P. 3002." Id. at p. 2.

### III.    The Debtors' Motion

On February 25, 2011, the Debtors filed the instant Motion seeking to modify the claim of BofA. The Debtors note that Plymouth Park Tax Services ("Plymouth"), through the purchase of a tax sale certificate, held a pre-petition tax lien on the Debtors' residence for pre-petition taxes owed. Further, on May 14, 2010, ten (10) days after the Petition Date, BofA, as mortgagee, paid to Plymouth the redemption value of $13,984.11 on account of the tax sale certificate. As set forth in the Motion, the Debtors argue that: (i) BofA's redemption of the tax sale certificate was an unlawful post-petition collection of a pre-petition obligation and, therefore, a violation of the automatic stay pursuant to 11 U.S.C. §§ 362(a)(1) and (a)(6), and (ii) but for the redemption by BofA, the Debtors would have had the opportunity to cram down the interest rate accruing to Plymouth on the tax sale certificate or extinguish the tax certificate

altogether, consistent with this Court's prior decision in In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010).[2]

Separately, the Debtors contend that BofA's claim should be limited to the August 12 Claim filed by the Debtors on BofA's behalf. The Debtors contend that because the Plan was confirmed based on the August 12 Claim, and because BofA did not object to confirmation, the Confirmation Order is *res judicata* on the amount of BofA's claim. As such, the Debtors argue that BofA's August 31 Claim is of no moment.

Lastly, the Debtors assert that the interest rate accruing on the tax debt owed to BofA should be limited. However, in light of the Court's ruling, the Debtors' argument regarding the proper interest rate is moot. As more fully set forth below, the Court finds BofA's redemption of the tax sale certificate to have been valid and, therefore, the Debtors have no basis to modify the rights of BofA, including the interest rate accruing on its claim, in contravention of 11 U.S.C. § 1322(b)(2).

IV. **The Automatic Stay**

a. **11 U.S.C. §§ 362(a)(1) and (a)(6)**

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay that protects the debtor and property of the estate. See 11 U.S.C. §§ 362(a). "Without question, the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." In re Cruz, 2006 Bankr. LEXIS 4125, *4 (Bankr. D.N.J. July

---

[2] On May 13, 2011, Debtors' counsel submitted a letter to the Court stating that, in the Debtors' petition [sic], "the interest rate on th[e] tax certificate was crammed down to approximately 4% from the original 18% interest rate…" See Docket No. 34. As discussed, *infra*, the Court has reviewed the docket, the Debtors' petition, and the Debtors' confirmed Plan, and finds no evidence of an intent to cram down or otherwise modify the rights of the tax sale certificate holder. Rather, the Plan states that Plymouth's claim is unaffected and shall be paid in full. As set forth in the Plan, requests to modify claims must be by motion. However, the tax lien at issue is not subject to any motions, whether in the Plan or otherwise. Thus, the Debtors cannot now claim that the interest accruing to Plymouth on the tax sale certificate was crammed down, or that parties in interest were aware of the Debtors' intent to modify the claim.

4

26, 2006). "'It gives the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions.'" Id. Additionally, the scope of the automatic stay is broad and covers all proceedings against a debtor. See Ass'n. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir.1982) (citing H.R.Rep. No.95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296-97). The specific provisions of the automatic stay significant to this case are §§ 362(a)(1) and (a)(6), which provide as follows:

> **(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —
>
> **(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title…
>
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. §§ 362(a)(1) and (a)(6).

As noted above, the Debtors assert that BofA's post-petition redemption of the tax sale certificate at issue was in violation of the automatic stay.[3] The Court disagrees. While

---

[3] BofA's right to redeem as mortgagee outside of bankruptcy is undisputed. In that regard, the Court notes that N.J.S.A. § 54:5-54 governs who may redeem a tax sale certificate. That section states, in relevant part, as follows:

> § 54:5-54. Except as hereinafter provided, the owner, his heirs, holder of any prior outstanding tax lien certificate, **mortgagee**, or occupant of land sold for municipal taxes, assessment for benefits pursuant to R.S.54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner in this chapter…

5

BofA's redemption of the tax sale certificate could be construed as an "act," the Court finds that such redemption was neither: (i) an act to commence or continue a judicial, administrative, or other action or proceeding against the Debtors, nor (ii) an act to collect, assess, or recover a claim against the Debtors. The redemption of the tax sale certificate did not further BofA's efforts to collect or recover on its underlying claim, nor serve as a step towards enforcement of its collateral rights in the Debtors' property. To the contrary, BofA's redemption of the tax sale certificate was merely an act to preserve and protect its claim, *i.e.*, its claim on the underlying mortgage note secured by the Debtors' residence, and was expressly permitted under the pertinent loan documents.[4] In fact, the Debtors' underlying residence continues to be property of

---

[4] Paragraph 6 of the underlying mortgage, which is attached to BofA's proof of claim, authorizes the lender to make advances to protect its liens:

> 6. Protection of Lender's Security; Lender's Authority To Make Advances Without Specific Request.
>
> Borrower shall appear in and defend any action or proceedings which may affect the security of Lender under this Mortgage or result in a violation of paragraph 3 above. If such an action is filed, or if Borrower violates this Mortgage or the Agreement, then Lender may disburse funds and do whatever it believes is necessary to protect the security of this Mortgage. In doing so, Lender shall give Borrower notice, but it need not make demand or release Borrower from any obligations.
>
> Borrower hereby authorizes Lender, on Borrower's behalf and on Lender's behalf, to make any payments Borrower is required to make under this Mortgage if Borrower fails to do so. Borrower appoints Lender Borrower's attorney-in-fact for this purpose and agrees that Borrower may not end this appointment. All such payments will be treated as advances under the Agreement. However, Borrower will repay these advances, together with FINANCE CHARGES on these advances, upon demand. In addition, to the extent permitted by law, Borrower will replay Lender upon demand any of its disbursements under the preceding paragraph, together with FINANCE CHARGES. Until paid by Borrower, all such amounts are secured by this Mortgage. Lender is not required to incur any expense or take any action under this Mortgage and no action taken shall release Borrower from any duty.

the estate and the Debtors can show no negative impact on the estate flowing from BofA's redemption of the tax sale certificate.[5]

The Court finds BofA's post-petition redemption of the tax sale certificate to be akin to a transfer of a claim, which frequently occurs in a bankruptcy cases despite the imposition of the automatic stay and, in fact, has occurred in this case. See Docket No. 23. Indeed, the Federal Rules of Bankruptcy Procedure include special provisions for filing proofs of transferred claims. See Fed. R. Bank. P. 3001. Moreover, it has been held that "[t]he transfer of claims in a bankruptcy case do not violate the automatic stay provision of 11 USC § 362(a)." See Utzler v. Braca, 2010 Conn. Super. LEXIS 922, *6 (Conn. Super. Ct. Apr. 19, 2010), citing In re R & L Engineering Co., 182 F.Supp. 317, 319 (S.D.Cal.1960).

Here, Plymouth held a claim against the Debtors based on its purchase of the tax sale certificate. Subsequently, BofA, in an effort to protect and preserve its underlying claim on the mortgage note, and consistent with its rights under the mortgage, but without acting on the underlying property, paid off Plymouth's claim and obtained the right to assert the redemption amount against the Debtors. Upon redemption, BofA, in addition to its claim on the mortgage note, now holds a claim against the Debtors for the redemption cost, which will be dealt with through claims reconciliation in the Debtors' bankruptcy case. Similar to an assignment of a proof of claim, therefore, BofA has not violated the automatic stay as it has not acted against the Debtors' estate. Rather, BofA simply acted to protect its claim on the mortgage note, thereby preserving the status quo ante.

---

[5] Indeed, the redemption of the tax sale certificate by BofA was beneficial to the Debtors in that, upon redemption, the outstanding obligation under the tax sale certificate ceased accruing interest at the higher 18% interest rate and thereafter the lower mortgage note simple annual interest rate of 5.24% applied.

### b. 11 U.S.C. §§ 362(d)

Even if the Court were to determine that a stay violation occurred, the Court finds that the facts and circumstances warrant an annulment of the stay for the limited purpose of allowing the redemption. As explained by this Court in In re Fannie Askew, 312 B.R. 274, 281 (Bankr. D.N.J. 2004), a court has the ability to retroactively annul the stay in the interest of equity and judicial economy pursuant to Bankruptcy Code § 362(d). In Askew, the debtor filed bankruptcy without providing notice to the tax sale certificate purchaser who continued to foreclose on the tax sale certificate and obtained an order (the "Redemption Order") fixing the amount, time, and place of redemption, in technical violation of the automatic stay. Id. at 277-78. Subsequently, the mortgagee bank, who had obtained a pre-petition judgment of foreclosure but whose sheriff's sale was halted in light of the debtor's bankruptcy, filed a motion seeking to reopen and reinstate the debtor's case, voiding the tax foreclosure, and reinstating the sheriff's sale. Id. at 279. In concluding that the criteria of Bankruptcy Code § 362(d) would have been met, the Court found that retroactive annulment of the stay with respect to the Redemption Order was appropriate, highlighting the fact that the mortgagee bank and the debtor had notice of the tax sale certificate purchaser's tax foreclosure action but failed to take action. Id. at 282-83.

In this case, the Court is guided by the analysis in Asknew. In that regard, the Court's analysis as to whether annulment of the automatic stay in favor of BofA for the limited purpose of redemption would have been appropriate begins with Bankruptcy Code § 362(d)(1). That section states, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

8

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…

11 U.S.C. §§ 362(d)(1). Thus, the Court must find cause in order to allow an annulment of the automatic stay pursuant to Bankruptcy Code § 362(d)(1).

The Court finds such sufficient cause to annul the automatic stay for the limited purpose of allowing redemption of the tax sale certificate. Under New Jersey State law, a holder of a tax sale certificate may foreclose pursuant to the appropriate statutory scheme, provided that the tax sale certificate was not redeemed prior to the tax sale certificate holder's right to foreclose. Thus, if BofA was precluded from exercising its right of redemption as mortgagee, its interests would have been at risk against Plymouth's foreclosure of the tax sale certificate, in the event the Debtors could not cure tax arrearages under the Plan. More significantly, the result of BofA's redemption served to directly benefit the estate by lowering the 18% interest rate accruing on the tax sale certificate prior to redemption to a simple annual interest rate of 5.24% pursuant to the underlying mortgage documents. While cramming down the 18% interest rate accruing to Plymouth may have further benefitted the estate, cram down of the tax sale certificate holder's claim was not contemplated under the Plan.

In light of the foregoing, the Court concludes that sufficient cause existed to annul the automatic stay for purposes of redemption, had there been a violation of the automatic stay by BofA. For purposes of clarity, however, the Court again emphasizes that BofA's redemption did not violate the automatic stay. Thus, Bankruptcy Code § 362(d) is not implicated.

**V.     Impact of Confirmation**

"The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Mullarkey v. Tamboer (In re Mullarkey), 536 F.3d 215, 225 (3d Cir. 2008). "Both New Jersey and federal law apply res judicata or claim

9

preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" Id.  Further, pursuant to Bankruptcy Code § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.  See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230, 238 (3d Cir. 2008).

In this case, the Debtors are correct that there is a general *res judicata* effect upon the Court's entry of the Confirmation Order.  However, the Confirmation Order in this case specifically carves out the ability of the Trustee to factor into the Plan proofs of claim filed after entry of the Confirmation Order but before the expiration of the claims bar date.  Such provisions are routinely included in confirmation orders in this District in an effort to expedite confirmation to the benefit of debtors and creditors alike.  Thus, BofA cannot be bound by the amount of the claim set forth by the Debtors in the Plan, based simply on the fact that it filed the August 31 Claim after the scheduled confirmation hearing.  Indeed, the Court agrees with the view expressed in Countrywide Home Loans, Inc. v. Stewart, 2011 U.S. Dist. LEXIS 55022, *27-28 (E.D. La. May 13, 2011), which held that "[w]here the deadline for filing claims falls after the deadline for objecting to a Chapter 13 plan, the failure of a creditor to object to a plan on the grounds that the plan has misstated the amount of the claim cannot, consistent with due process, bind the creditor with respect to the amount which the creditor is required to identify no earlier than the deadline for filing proofs of claim."  Accordingly, the Court finds that BofA is not bound by the August 12 Claim filed by the Debtors' on BofA's behalf.  Rather, BofA is entitled to rely on its August 31 Claim.

**VI.    Conclusion**

For the foregoing reasons, this Court finds that: (i) BofA did not violate the automatic stay by redemption of the tax sale certificate, and (ii) BofA's claim is not limited to the August 12 Claim filed by the Debtors. The Court will enter an order consistent with its findings.

*signature*
Honorable Michael B. Kaplan
United States Bankruptcy Judge